## Mattocks and Bemus *v.* Cullum.

In a lease for years, it was agreed that the lessee should put the mills, &c., in complete order for running, and keep a correct account of the same, *which is to* apply towards paying the rent *on* the second year of the lease, and all after-repairs at the expense of the lessee. The tenant may deduct the cost of repairs from the rent of the third year, if it exceed the rent reserved for the second year.

In error from the Common Pleas of Crawford county.

*Sept.* 28. This was an action of replevin, brought by Cullum, for a distress for the rent accruing on the third year of a lease to Lockart, of whom he was the assignee. The question was, whether

the rent was applicable to the repairs under the covenant in the lease.

It was a demise for ten years, at a rent of $500 for the first, and $1050 for each subsequent year. The clause in question was as follows : " Said Lockart (the lessee) to put mills and race in complete order for running, and keep a correct account of the same, which *is to apply* towards paying the rent on the second year of the lease, and all after-repairs at the expense of Lockart."

The repairs, as proved by estimates of the workmen, amounted to between $2000 and $4000.

The question was, whether the landlord was liable beyond the amount of the second year's rent.

McCALMONT, P. J., (holding a special court,) considered the landlord liable for the whole of the expense of repairing.

One Taylor was examined : he was present at the execution of the lease, and heard some one speak of the repairs costing $700 to $1000.

The admission of his testimony, and the ruling of the main point, were the errors assigned.

*Derrickson* and *Pearson*, for plaintiff in error.—The terms of the lease expressly limit the extent of the repairs to be done by the landlord to the second year's rent : 13 Pick. 167 ; 7 Term Rep. 212 ; 3 Law Lib. 159, 164 ; 7 Serg. & Rawle, 40. The after-repairs, that is, those over and above that sum, are to be at the cost of the lessee. The ambiguity being patent could not be removed by parol evidence.

*Farrelly* and *Galbraith*, contrà.—The whole is to be construed together. That the mills are to be completely repaired at the expense of the lessor, is plain; the object of designating the fund for re-payment, is to show that the lessee is to advance the cost, and how he is to be repaid : Chitty on Contracts, 20, 21, 23 ; 3 Bos. & Pul. 565 ; 2 Bing. 519 ; 8 East, 89 ; Willis, 327 ; Plowd. 161 ; Touch. 88, 89.

*Oct. 5.* ROGERS, J.—The material parts of the covenant on which the question turns, are these : Bemus agrees to rent to a person of the name of Lockart, a certain tract of land, with a mill-house and appurtenances thereunto appertaining, for the term of ten years; he, Bemus, to be at the expense of putting the mill in complete operation. In consideration whereof, Lockart agrees to pay to Bemus, for the first year $500, and $1050 annually there-

after. Lockart agrees to put the mill and race in complete order for running, and keep a correct account of the same, to be applied to payment of rent the second year, and all *after* repairs to be at the expense of Lockart.

In the construction of every instrument of writing, we must, in order to ascertain the intention of the parties, give every part of it its fair and legitimate meaning. Now, the primary object of the parties here was to put the demised premises, which it seems were in a dilapidated condition, in complete order and repair. And this was for the benefit of both lessee and lessor. The work was to be done in the first instance by the lessee, and at his expense, he keeping a correct account of his expenditure. The cost, however, was finally to be paid by the lessor. The covenant to repair by the lessor, is an express and controlling covenant, binding on both parties; unless there is something in the agreement which modifies and alters its legal signification. Accordingly, the landlord contends, that although he is bound to repair and put the property in complete order, he is not bound to contribute more for that purpose than the amount of the second year's rent, viz. $1050. But this would be unreasonable. The property must be put in order by either one or the other, for otherwise it would be useless. There is nothing in the agreement which binds the lessee to do more than to cause the work to be done, and to advance the necessary funds, keeping a correct account of the expenditures. It is not alleged that there has been any expenditure which the property did not require. The improvements are permanent, and of course enure to the benefit of the landlord, who will receive his property, after the expiration of the term, in complete order and repair. It would, therefore, as I before observed, be unreasonable that the lessee should be at the expense of paying for repairs which benefits the inheritance. If it was their intention that he should do more than advance the necessary funds, it would have been easy to say so in express terms. The addition of a very few words would have been all that was required. I am inclined to believe that it was the supposition of both, that the improvements would not cost more than the amount of the second year's rent. But this was a mistake, common to both parties, and perhaps not in the contemplation of either, and should not be suffered to control an express covenant. It was agreed that the lessor, who was in want of funds, should receive the first year's rent in cash, without deduction; but that the expenses to be in the first instance advanced by the lessee, should be applied towards payment of the second year's rent. From

·this an argument is drawn, that more than that amount is not to be paid at all by the lessor. But we think this is an inference which the words, which at most are equivocal, do not warrant, and certainly should not be allowed to override an express covenant. It proves nothing more than that the parties were mistaken as to the state and condition of the premises, and the cost of putting it in complete order and repair. The construction of the lessee gives effect to the whole, for it is applied to the payment of the second year's rent, and so far the terms of the agreement are satisfied. The contract is, that *all after* repairs are to be at the expense of the lessee. To what does the word *after* refer ? It is very clear, to all the expenses which may be necessary after the property is thoroughly repaired. Thus the contract is, that the lessor shall put it in complete order, and the lessee shall keep it so until the termination of the lease.

In addition, we think the lessor has no reason to complain of the admission of Taylor's testimony, which, so far as it goes, is in his favour. It has a tendency to show that the parties thought the repairs would not exceed the second year's rent.

Judgment affirmed.